We will now turn to the second case in the calendar, 21-671CV, Micah Notz v. Connecticut Commission on Human Rights. And I understand we have both counsel present. We'll let you get settled at the table first. Thank you, sir. Okay. So we have Mr., is it Taubes? It's pronounced Taubes. Taubes. Mr. Taubes, I understand you would like to reserve two minutes for rebuttal? Yes, please, Your Honor. Then please proceed. Thank you, Your Honors, and may it please the Court. My name is Alexander Taubes, and I represent the plaintiff appellant in this matter, Micah Notz, who is with us present in the courtroom today. Micah Notz is the president and founder of Employee Rights, an agency in the state of Connecticut that assists people who have been discriminated against, fired, injured, or otherwise harmed at work. Employee Rights shares a goal with the Equal Employment Opportunity Commission. That is to eliminate discrimination in all of its forms in workplaces, whether that be against people on the basis of race, gender, sexual orientation, or disability, or national origin. The Equal Opportunity Employment Commission is able to achieve this mandate primarily by receiving, by crowdsourcing, discrimination, complaints about discrimination. And the United States Supreme Court has on multiple occasions stated that Title VII and the entire nondiscrimination remedial scheme that surrounds Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, is intended to be a process that begins with laypersons rather than trained lawyers. And that is why EEOC regulations 29 CFR 1601.5 and 1601.15 and .7 both permit non-attorney advocates to both file charges before the EEOC on behalf of persons who have been discriminated against and also submit evidence, statements of position, or other information to the EEOC, which helps the EEOC accomplish its mandate of eliminating discrimination. Well, those are instances where there are proceedings against the federal government, right? Not only in proceedings against the federal government. Well, 105 specifically speaks to proceedings against the government, correct? I was referring to 1601.15. Okay, I apologize. And also 1601.7, which allow non-attorney advocates in all cases before the EEOC. Well, it says that they may be made by or on behalf of any person claiming to be aggrieved. That's .7. And then .15 allows the on behalf of to be by any person. The person making the charge on behalf of such a person. Correct. On behalf of, it says. Right, and on behalf. It doesn't use the word represent. It does not use the word represent. But in 1614.105 in claims against the federal government, it says the complainant shall have the right to be accompanied, represented, or advised by a representative of complainant's choice. And those two formulations. Why wouldn't they use the same language in both places if they wish to convey the same idea? Wouldn't you agree with me that represented is far more indicative of what Ms. Knott claims she's entitled to do? Without question, regulations could be more clear. Then why would we ignore the difference in the language? Well, the EEOC doesn't make a difference. The EEOC, in interpreting its own regulations, permits MICA to still file claims on behalf of claimants. Right. And when you bring a class action, the action is entitled John Jones on behalf of people similarly situated. The term is a term of art, on behalf of. A father brings a claim on behalf of his child because the child doesn't have a legal entity, isn't able to bring a proceeding at that point in time. On behalf of implies being the party, not being a litigant, being the party. So how do you differentiate that? Well, we look to the plain language, which does include representation within on behalf of, as well as the EEOC's longstanding practice. In the case of Sperry v. Florida, which looked at whether non-attorneys could prosecute cases in the patent office, not only did the court look at the regulations, but also at the longstanding practice of the patent office and the EEOC. The patent law, I've often thought of as being a black hole from which no light of reason emerges because it's so particularized. And I always get nervous when I end up having something to do with the patent office. But that aside, I'm not – I have a problem with the analogy where because there are – patent law is a very particularized area where science and other skills come to play. So patent agents can play a very particular role there. But my problem is, is the differentiation in the language here. You're saying that it makes no difference, and yet rules of construction tell us that generally differences in language have a purpose. Generally they do, but oftentimes different phrases can mean the same things. And they often do in the law and in regulations. But I would say this – This is a preemption argument you're making, and the burden's on you to establish that there's an intent to preempt any state choice in this area. And the preemption comes here, Your Honor. The EEOC wants to receive evidence and information about discrimination, whether it's from the NAACP, an individual on the street, an agency, Micah Knotts. But the CHRO in Connecticut, when acting as an agent for the EEOC and following federal law, bars Micah Knotts from bringing forward that information about discrimination, which is the mandate of the EEOC even when it's using the CHRO as an agent to receive. But seriously, Ms. Knotts could have brought the action in her own name on behalf of undisclosed individuals under the statute, couldn't she? I think that she would have been found to be violating the CHRO's practice in no – The regulation says that it can be – the written charge need not identify by name the person on whose behalf it's made. That's 1601.7. So I don't – First of all, let me say something. I greatly appreciate, and I'm sure the rest of us do too, the fact that you would take up her cause. And I certainly appreciate that Ms. Knotts has had a long career doing this. But this is a law question. It's not about her personally. This is about a law question. And I think it's – I'm proud of the fact that you're here. I appreciate that. It doesn't mean you win or you lose for me. Of course. But I appreciate that. But she can do that. The regulation allows her to do that, does it not? The complaint alleges that on multiple occasions the officials of the CHRO have told her, get out of here. There's been a person who she's been trying to help. They've been trying to identify – So is this a lawsuit to allow her to present evidence? Or is this a lawsuit to allow her to file claims on behalf of, under her name, undisclosed individuals who have been subjected to discriminatory practices? It's not strictly about undisclosed individuals, Your Honor. It's not. The typical way this happens is someone who is disabled – maybe they can't see or they can't hear or they have some other disability – gets fired. And they can't afford an attorney. And frankly, Your Honor, I understand that. I was once fired from a job and had to try to find an employment attorney. It's expensive. And when they go online and they look for someone who can help them, they find Micah Knotts. And what Micah Knotts helps them do is draft a complaint, takes down, writes down the same thing that she does. And when she goes to court, she holds their hand. She helps them go in front of that agency. And now that the CHRO has banned her, she can still go to the EEOC, but she has to take her claimants to Boston. And she might still lose the ability to represent them if the EEOC administratively transfers the case back to Connecticut. This conflict between what someone can do with the federal agency and what someone can do with the state agency acting in the federal agency's shoes on a federal claim, that is conflict. And that is a conflict which impedes the discrimination law. Can I ask about that a little bit? Because I've been struggling to understand the relationship between when the state agency is adjudicating a state law claim or processing a state law claim and simultaneously pursuant to the statutory designation or the regulatory designation in the Work Share Agreement, taking actions that will have an impact on the federal side. Are they in fact standing in the shoes of the EEOC? Because I see that the regulatory structure doesn't say that the decision of the state agency binds the EEOC as to the federal claims. It's entitled to substantial weight. It's presumptive weight or there's a request for substantial weight determination. Doesn't that mean that the EEOC is still operating distinctly from the state agency as it relates to the ultimate adjudication of these claims? Typically both is occurring. Both the CHRO is acting independently and distinctly on state law claims as well as processing federal law claims. And typically what happens is an individual who cannot ever find an attorney will process, will go through the administrative process all the way to its end. But if someone does find an attorney at some point during the process, they can seek a release of jurisdiction from the CHRO in which the CHRO will process that. And they actually need that in order to be able to file their case in federal court. They need the permission of either the EEOC or the CHRO releasing the jurisdiction on the federal claims in order to be able to get into federal court. Same with state claims in state court, although with the state claims the CHRO can actually dismiss them and then you have to take an appeal against the CHRO itself. And so in some ways the federal law provides a much easier route to court for many individuals. And now the only way that individuals can seek MICA's assistance and get their federal claims from being fired to the EEOC to court with MICA's assistance is to essentially go up to Boston and file it in Boston and hope, cross your fingers, that the EEOC does not transfer the case back to the CHRO for the processing that they typically do in addition to their state process and be able to navigate it in Connecticut without MICA or hopefully you can afford an attorney at that point. But what's being – some people may not bring their claims at all if they can't have MICA's help and if MICA can't operate her business. And so what's the real impediment that's being created is discrimination law. Well, hang on a second. If I could jump in there. She can operate her business but not at the same scope that she would like. These are two different questions, right? We have the preemption issue. There is a due process issue. And then we have these other issues which I think analytically are distinct. Would you agree? I would agree. There is a question of how broadly you can define Ms. Knox's profession. And the district court defined it extremely broadly and said essentially that she's a human resources professional and she can still continue to practice in the field of human resources. And before the EEOC in Boston if she likes. Yes, although I would argue that the district court gave short shrift to the major problems with that, including what she alleged in her complaint about cases being transferred. And she has no control over that. And I think if someone is really hesitant, they've been sexually harassed by their boss, and they're hesitant about the blowback and the backlash that's going to come from coming publicly. But now we're talking about the interests of the client, right? They want someone to help them. But my point is I understand you're making certain arguments, procedural due process, with respect to your client. She has a right to exercise her profession to a certain extent or in certain places. And those are rights that if they exist they would attach to her. Whereas then when you start talking about her clients, I guess that seems to be a different interest. Maybe that would relate to your argument about what the EEOC must have had in mind when they were enacting their regulations. And, therefore, I guess it goes more to preemption. It goes more to preemption and also the ADA claim. Because you have to keep in mind the people who assist others with disability discrimination claims also have a right not to be discriminated against under the ADA. And then she would be standing in their shoes to assert their rights. I think unless we have any other questions. Let me do this right now. You've held two minutes for rebuttal. We'll get you back. Thank you. Why don't we hear from I think we have Ms. Kindle. Is that right? Correct, Your Honor. Yes. Would you proceed? Why don't we hear from you? I knew this went up. The button on raising and lowering the lectern is a very useful thing to know about, yes. Thank you. Good morning. May it please the Court. I'm Solicitor General Claire Kindle, representing the CHRO and its now-retired principal attorney, Charles Critch. There is no constitutional right to practice law without a license. There is no federal or state statutory or regulatory right to practice law without a license. Both state and federal law permit representation by a non-attorney before administrative agencies if and only if the agency permits it. And the fact that the EEOC may permit it under certain circumstances does not mean that the CHRO or any state agency must permit it. So if I could just... Now, can I... Please. No, Judge Robinson. Please. Go ahead. So there's been a debate about what the EEOC's regulations and statute provide with respect to the EEOC itself, and then there's the secondary question of what impact that has on the Connecticut Human Rights Organization's own work. Do you concede that under the EEOC's regulations, the EEOC does accept complaints filed on behalf of aggrieved individuals and also accepts written materials in the context of their investigations from individuals on behalf of aggrieved individuals? I do agree, Your Honor. However, what Ms. Knotts is asking for, and it's in her complaint, if you take a look at her Second Amendment complaint, Special Appendix pages 21, 22, 24, paragraphs 2.2, 11, 15, she's looking to represent people. She's not looking... Okay, but I want to understand, because it may not be all or nothing here, right? So one of the things I'm trying to understand is breaking it into some of the pieces, and I understand your position as to focal representation and adhering, but when I'm looking at the statutes and the designation of a state agency to accept complaints, and it actually designates under the Work Share Agreement and the designation, as I understand it, there are things that the state doesn't even have jurisdiction over, but still is bound to accept the complaints on behalf of individuals and forward them to the EEOC. And so what I'm wondering is, in those cases or in cases where there's dual jurisdiction, is Connecticut declining to accept the complaint, or the report complaint, if it's filed on behalf of an individual? Forget about representation and adhering. My understanding is that Connecticut is not declining the filing of the complaint, Your Honor, and that that is not an allegation in the Second Amendment complaint or anywhere. What we are declining is to permit misnots to represent clients. Now, Connecticut has, and that there's nothing in the Work Share Contract that requires Connecticut to adopt EEOC procedures. There is a section that says any procedure that had to be included had to be part of the executed Work Share Agreement, and the Work Share Agreement is silent on it, and that's at the appendix. I'm sorry, I think there's a question. Oh, I'm sorry. I'm sorry. Right on that point, the Work Share Agreement does require that both agencies adhere to the procedures in EEOC's state and local handbook, and I wasn't able to put my hands on that. Does that exist somewhere where we can look at it? It does. It's 1987, and it's silent on the issue of what procedures are required, but also if you take a look at the Work Share Agreement on SA-67 or AA-55, section C, Roman numeral capital II, sub B, you will see that any procedures had to be part of the executed Work Share Agreement, and the Work Share Agreement is silent on it, but also the handbook was from 1987 and says nothing on this issue, and the whether or not someone can practice law, Your Honor, is very much sort of a state police power authority. The regulation of the practice of law is very much a state law issue, and there's nothing in the regulations or the statutory or the contract  If the EEOC, and you can see, authorizes individuals to file complaints on behalf of, are you saying they can file a complaint on behalf of an individual, Connecticut will accept it, but if a lawyer is the one filing on behalf of, by doing so they are vulnerable to an unauthorized practice of law charge in Connecticut? No, Your Honor. It's not the filing of the complaint. It's having a hearing and representing the witness at the hearing or making arguments before an administrative law judge as to legal conclusions to be drawn from whatever evidence is deduced at the hearing, right? Correct. So she can file a complaint because the statute uses the term that seems to be commonly understood, on behalf of. She actually could file a complaint on behalf of an undisclosed individual. That's correct, Your Honor. And let me just take a moment to, I mean, Connecticut has a very robust protection system. I mean, in my days of practicing law, which was a while ago, I never filed a complaint in my own name. I represented someone. Now, if it was a child, the father filed a complaint on behalf of their child, but the lawyer's name doesn't appear on the complaint in the title, and the lawyer's name appears in the background. So there's quite a distinction between representation and on behalf of. Absolutely, Your Honor. And, Your Honor, the fact that this EOC in 1614.605, which is on page AA139 of the plaintiff's appendix, says that there shall be a right to accompany represented or advised, and that they do that only for federal employees and do not do it anywhere else, I think is of note. What is the underlying thing here? There's a robust protections for pro se within the Connecticut system. There is pro formus forms of how to say I've been discriminated against. The form gets an initial screening as long as it passes a very light initial muster. It gets immediately assigned for investigation. Well, this just goes, I mean, that just goes to whether this is a good idea or not, right? Or whether it's, I mean, isn't the question, as I take it, at least the first question of preemption, whether if we take as a baseline, as I understand it, at least two propositions. One is that, absent anything else, the state of Connecticut, under their general police powers, can regulate the practice of law. Correct. The second principle is that the EEOC could preempt that in this limited circumstance, right? I mean, you would agree if there was a statute that said, you know, the CHRO can team up with the EEOC, and if it does so, it must operate in exactly the same way the EEOC does. And if the EEOC allows non-attorneys, then the police power is preempted, right? The EEOC could do it either by regulation or by contract. Right. But neither has happened. And that's, so that comes to my third proposition, which is, and so my understanding is that in this case, the question is, has Congress, by statute, or has the EEOC, by regulation, or I suppose by this workforce agreement contractually, changed the ground rules such that Connecticut no longer has a choice in the matter, right? And if it's silent or if it's, I guess that's not really the question, right? It's the question my understanding is. It has to be expressed, Your Honor, and they have not done so. Well, or it can be more than tension, but there has to be a sharp conflict such that the repugnance in conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together. So it sounds to me like it need not actually be expressed. That is correct. If there are two ideas that one could not hold in one's mind at the same time and survive, then you would have preemption. So that seems like a pretty strict standard. I guess that's your argument? That is correct, Your Honor. Okay. And if I'm understanding the limits of the argument, it's limited to the context of representing before a commission. And if I'm understanding it right, you wouldn't be opposed because it's consistent with your own view to an order that acknowledged that the EEOC's allowance of any person to file complaints and to file information in the context of investigations does mean that doing so with the CHRO when it's acting in its capacity as a state-designated agency would not constitute the unauthorized practice of law. I believe that is correct, Your Honor. Let me just be clear. There are two phases in any sort of discrimination complaint. One is the investigatory phase before you hit a contested case. And my understanding is that Ms. Knotts was seeking to represent and all throughout her complaint it's representation of clients. So she can file information. Anybody can file information. They can file evidence. That's a different thing than representing somebody during the mediation or representing somebody and saying I'm now providing argument. So the providing of information to any state agency isn't the practice of law. It's the I'm standing up in the shoes of a client. And the other thing to know is that if this goes to hearing before the CHRO and it goes into successful investigation, CHRO itself steps in and represents the claimant. Now the claimant's entitled under the regulations to also have a representative, a lawyer, but that lawyer under Connecticut statutes has to, I mean Connecticut regulations, has to be admitted into the practice in Connecticut when you hit the contested case stage. Can I ask a question about, I guess, the scope of jeopardy is perhaps the wrong word for it, but the scope of potential adverse consequences to which Ms. Knotts could be subjected under what I understand you're arguing the rules are. If she were ghostwriting submissions for a client who had proceedings pending before the CHRO, could she be exposing herself to penalties under Connecticut law for the unlawful practice, the unauthorized practice of law? Your Honor, I don't know the answer to that. I believe that clearly a complainant and a respondent can appear pro se and where they get their information, the background, I don't know. Yeah, but if a lawyer, say like a lawyer's been disbarred and the lawyer ghostwrites briefs, gets hired by a law firm to ghostwrite a whole lot of briefs, in, I don't know, housing court or any context whatsoever, and lawyer A files a lot of briefs that have actually been ghostwritten by disbarred lawyer B. I don't really know the answer, but it was always my assumption that disbarred lawyer B could run into problems if it were found that disbarred lawyer B was engaging in unauthorized practice of law. Maybe that's true or not, but would Ms. Knott similarly be exposing herself to that kind of, I don't know, whatever proceedings would happen there? I don't know, Your Honor, to be fair. I just know whether or not can she appear before CHRO representing clients and that the agency has the discretion to say no, she cannot. And so I would say, oh, thank you, just simply in closing saying CHRO had the full authority or discretion to do it. Just because there's no right, there's no constitutional violation, and there's no preemption. Thank you very much. Why don't we hear from Mr. Talbots. You've reserved two minutes for rebuttal. Let me just check, though. Judge Robinson, did you have any further questions before we move on? Okay. Mr. Talbots, would you address that last question? And I don't know if you know the answer. I don't. It's a Class D felony in the State of Connecticut to practice the unauthorized practice of law. And, in fact, Mr. Critch threatened Micah with such an investigation. The question is whether that would constitute unauthorized practice of law. A lawyer ghostwriting briefs would constitute unauthorized practice. There's a Connecticut law that states that anyone who's helping to write something that's going to go in front of a court has to put their name on it, and you can't ghostwrite. So putting a gloss, I suppose, on your argument, tell me if this is true. If the State's position is correct on this and your client were not allowed to appear before the CHRO, but nevertheless were doing background work like ghostwriting submissions and all that, which would then be filed by the client in the client's name, your Ms. Knotts could be exposed to potentially penalties for unauthorized practice of law in Connecticut? Yes, yes. And the two points I wanted to make very quickly, Your Honor. The first is Micah really does want the ability to file complaints before the CHRO. She is not currently allowed to do so. This is news to us that she's allowed to do so. So we just heard she is. We just heard that Connecticut doesn't have any problem with that. That's the attempt to participate in a hearing. Like I said, that's news to us. If she files it, well, she may be seeking to file it as an advisor, but if she files it in her own name on behalf of someone, she can do that. Certainly there are potential— There's a distinction, and that has to be appreciated. I don't believe that she's allowed to under any circumstances. Okay. The second thing that she's not allowed to do is provide the position statement, which is really just evidence to the mediator for the mediator to consider. Argument in contested cases is in fewer than 5% of CHRO's cases. That's very, very far down the line of the CHRO process. Micah Knotts, 95%—99% of her work is in those first stages, helping the person report their discrimination to CHRO and then providing the information to the mediator through a position statement of what exactly happened. She doesn't seek beyond that through this case. She does have other cases where she's seeking more. She has a state court case about the way that this was issued. It wasn't issued through a law or a regulation. It's just the attorney saying you can't do it. But this federal case is about the sharp conflict that exists because, again, EEOC, its purpose is to eliminate discrimination. It does so through crowdsourcing of complaints. When you shut off a method by which laypersons may initiate this process, you are creating a sharp conflict with how a New York individual— I understand that, Counselor. The question is whether the federal statute is preempted. Connecticut's choice in that. And whether it's a good choice or a bad choice is for other people to decide. But for us, it's a law choice. That's it. And we say it's the Administrative Procedure Act, Section 555B, as well as Title VII, which create the preemption process. Can I—did you have one other point you wanted to make, Counsel? No. Okay, good. Let me just ask you both if you would indulge us. I thought there was a little bit of at least confusion on my part, having heard both of the arguments about one of the points. And I would ask that you each submit a supplemental letter, no more than, I would say, three pages, single-spaced. Why don't we say by this Friday at close of business, 5 p.m. Just clarifying whether you each take the position of whether, under Connecticut law as written, and perhaps under the policies articulated by the CHRO, whether Ms. Knotts is authorized to file complaints before the CHRO on behalf of clients. In or on name? And specify whether your view is dependent on this distinction that we've been talking about, in her own name, or whether—I suppose this is partly, mostly perhaps for the CHRO— or whether it's also permissible in her representative capacity. So I don't know if that question is clear enough, the way I've posed it. Basically what she's allowed to do now and what she's not allowed to do now. Right, because it seemed to me that there was a little bit of potential agreement, or at least a new wrinkle as to the scope of what CHRO would allow her to do right now. And it wasn't entirely clear to me. Maybe it's clear to my fellow members of the panel. But I think if you could bring a little clarity, particularly from this—let's do this. Maybe the CHRO could file first. Why don't we do it sequentially? The CHRO, could you file something by Wednesday at close of business, 5? Why don't we say Friday, close of business, 5? And then, counsel, can you respond by, say, the following Wednesday? Yes. Is that by 5? Yes, absolutely. I think that would be helpful. And, again, no more than three pages, single spaced. So thank you very much. Very helpful argument, and we will resume.